IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLAVANIA

| | |
|---|---|
| MIRZA AHMETASEVIC, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 19-5707 |
| CITIBANK, N.A., | |
| Defendant. | |

**OPINION**

**Slomsky, J.**                                                                                      **August 31, 2020**

**I.  INTRODUCTION**

On December 4, 2019, Plaintiff Mirza Ahmetasevic brought this suit against Defendants Trans Union LLC, Experian Information Solutions, Inc., Equifax Information Services, LLC, and Citibank, N.A., alleging violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, et seq., the Fair Credit Billing Act ("FCBA") 15 U.S.C. § 1666, and defamation of character.[1]  On February 21, 2020, Defendant Citibank ("Defendant") filed a Motion to Compel Arbitration pursuant to an arbitration provision contained in a Card Agreement sent to Plaintiff by Citibank. (Doc. No. 19.)[2]  On February 28, 2020, Plaintiff filed a Response to the Motion, arguing that the arbitration clause was unenforceable and that he was entitled to a jury trial on the claims asserted

---

[1]  The defamation of character claim was alleged against Defendants Trans Union, Experian, and Equifax.  Citibank is not a defendant on this claim.

[2]  On March 4, 2020, Equifax Information Services, LLC was voluntary dismissed from this case. Trans Union LLC and Experian Information Solutions, Inc. separately filed answers to the Complaint.  (Doc. Nos. 9 and 10.)

here.  (Doc. No. 20.)  On March 6, 2020, Plaintiff filed a Reply in support of his Motion.  (Doc. No. 22.)  For reasons that follow, Defendant's Motion to Compel Arbitration will be granted.

## II.  STATEMENT OF FACTS

On or about October 29, 2018, Plaintiff was issued a Citi Premier Mastercard by Defendant Citibank.  (See Doc. No. 19, Declaration of Kelly Booth (the "Booth Decl."), Ex. A at 2.)  The MasterCard Account is subject to written terms and conditions in a Card Agreement, which was mailed to Plaintiff at the time the Account was opened.  (Id.)  Included in the terms and conditions is an arbitration provision, which provides as follows:

> **Arbitration**
>
> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**
>
> This section provides that disputes may be resolved by binding arbitration.  Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action.  In arbitration, disputes are resolved by an arbitrator, not a judge or jury.  Arbitration procedures are simpler and more limited than in court.  This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.
>
> **Covered claims**
>
> • You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").
> • If arbitration is chosen by any party, neither you nor we have the right to litigate that Claim in court or have a jury trial on that Claim.
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding

> past, present, or future conduct; and Claims made independently or with other claims.  This also includes Claims made by or against anyone connected with us or you or claiming through co-applicant, authorized user, employee, agent, representative or an affiliated/parent/ subsidiary company.

(Doc. No. 19, Citi Premier Mastercard Agreement (the "Card Agreement"), Ex. 1 at 17.)

The Card Agreement also has terms covering arbitration limits, how arbitration works, claims that could be asserted by the parties, payment of arbitration fees, survivability and severability of terms, and rules for rejecting the arbitration provision. (Id. at 17-18.) Regarding the latter, the Card Agreement states as follows:

> **Rules for rejecting the arbitration provision**
> You may reject this arbitration provision by sending a written rejection notice to us at PO Box 6195, Sioux Falls, SD 57117-6195. Your rejection notice must be mailed within 45 days of Account opening.  Your rejection notice must state that you reject the arbitration provision and include your name, address, Account number and personal signature.  No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us.  Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the Account.

(Id. at 18.)

Plaintiff never rejected the arbitration provision and continued to use the Account after October 2018.  (Booth Decl. at 4; see also Doc. No. 19, December 2018 Bank Statement, Ex. 3 at 25-27.)

On or about July 17, 2019, Plaintiff purchased airline tickets using the Citibank credit card. (Doc. No. 1 ¶ 10.)  Later that same day, Plaintiff canceled his purchase, and claims he notified Citibank of the cancellation.  (Id. ¶ 11.)  Plaintiff contends that Citibank continued to attempt to collect the balance, and furnished, and continued to furnish, inaccurate data regarding the canceled

3

purchase to Defendants Trans Union, Experian, and Equifax for use on Plaintiff's credit reports. (Id. ¶ 12.)

These events led to the filing of the Complaint (Doc. No. 1) and to the filing by Citibank of the Motion to Compel Arbitration pursuant to the terms of the Card Agreement and the Federal Arbitration Act ("FAA") (Doc. No. 19).

### III. STANDARD OF REVIEW

#### A. The Federal Arbitration Act ("FAA")

The FAA, 9 U.S.C. §§ 1, et seq., establishes a strong federal policy in favor of resolving disputes through arbitration. Alexander v. Anthony Int'l L.P., 341 F.3d 256, 263 (3d Cir. 2003). The FAA provides, in relevant part, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore, if the parties enter into a valid agreement to arbitrate, and the specific dispute falls within the scope of that agreement, the FAA mandates judicial enforcement of that agreement. See 9 U.S.C. §§ 2-4; Circuit City Stores v. Adams, 532 U.S. 105, 111 (2001); see also Bey v. Citi Health Card, No. 15-6533 2017, 2017 WL 2880581, at *3 (E.D. Pa. July 7, 2017) (citing Trippe Manufacturing Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005)).

#### B. Standard For The Motion To Compel Arbitration

Given these provisions of the FAA, the Third Circuit Court of Appeals has provided guidance on the standard district courts should use to determine whether the parties agreed to arbitrate. See Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 771 (3d Cir. 2013). In Guidotti, the Third Circuit recognized that some cases "support the traditional practice of

treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Id. The test under Rule 12(b)(6) is whether under any "plausible" readings of the pleadings, the plaintiff would be entitled to relief. Id. at 2 (citation omitted.). Under this standard, district courts "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Id. (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

In other cases, the summary judgment standard would apply. Id. Using this standard, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In its evaluation, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The party asserting there is a genuine dispute of material fact must support that assertion by "citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Under both standards, the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92 (2000).

Here, the Court will consider Defendant's Motion to Compel Arbitration under the summary judgment standard. See Fed. R. Civ. P. 56(c). Defendant agrees that this standard applies because the Card Agreement, the operative contract, is not attached to the Complaint as an exhibit. (Doc. No. 19-2 at 13.) Therefore, the Complaint does not make clear that the parties entered into

5

an agreement to arbitrate. (Id.) But the Card Agreement with the arbitration requirements was included in the record as a critical exhibit attached to the Motion to Compel Arbitration. The Court will therefore analyze the Motion to Compel Arbitration under the summary judgment standard in Fed. R. Civ. P. 56. See Bey, 2017 WL 2880581 at *3 n.3.

## IV. ANALYSIS

### A. The Card Agreement Contains A Valid Arbitration Agreement And The Claims Fall Within The Scope Of The Agreement.

As noted above, a court must compel arbitration if (1) a valid arbitration agreement exists between the parties; and (2) the dispute falls within the scope of the agreement. Mitsubishi, 473 U.S. at 626-28; Bey, 2017 WL 2880581, at *3 (citing Trippe, 401 F.3d at 532).[3]

---

[3] Defendant asserts that "numerous courts have enforced Citibank's arbitration provision containing similar (if not identical) language to the provision currently before the Court." (Doc. No. 19-2 at 17 n.3) ("See e.g., Ware v. Citigroup Fin. Prods., Inc., No. 1:13-cv-00369-CC, Dkt. No. 37 (N.D. Ga. March 5, 2014); Samenow v. Citicorp Credit Servs., Inc., No. 16-1346 (CKK), 2017 WL 2303962 (D.D.C. May 25, 2017); Bey v. Citi Health Card, No. 15-6533, 2017 WL 2880581 (E.D. Pa. July 6, 2017); Lenkowski v. Citibank, N.A., No. 8:16-cv-03472-CEH-AAS, Dkt. No. 24 (M.D. Fla. April 18, 2017); Drozdowski v. Citibank, Inc., No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543 (W.D. Tenn. August 31, 2016); McCormick v. Citibank, N.A., No. 15-CV-46-JTC, 2016 WL 107911, at *6 (W.D.N.Y. Jan. 8, 2016); Carr v. Citibank, N.A., No. 15-cv-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015); Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d at 1198- 99; Coppock v. Citigroup, Inc., No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); Tractenberg v. Citigroup Inc., No. CIV.A. 10-3092, 2011 WL 6747429 (E.D. Pa. Dec. 22, 2011); Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172 (N.D. Cal. 2012); Guerrero v. Equifax Credit Info. Servs., Inc., No. CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012); Eaves-Leonos v. Assurant, Inc., 3:07-CV-18-S, 2008 WL 80173, at *6-7 (W.D. Ky. Jan. 8, 2008); Taylor v. Citibank USA, N.A., 292 F. Supp. 2d 1333 (M.D. Ala. 2003); Citibank USA v. Howard, No. 4:02CV64LN, slip. op. at 7, 2002 WL 34573997 (S.D. Miss. Aug. 30, 2002); Sesto v. Nat'l Fin. Sys., Inc., Case No. 04 C 7768, 2005 WL 6519430 (N.D. Ill. Apr. 25, 2005); Barker v. Citibank (South Dakota), N.A., No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003).")

### 1. The Card Agreement Contains A Valid Arbitration Agreement Between The Parties.

Here, a valid arbitration agreement exists between the parties under the terms of the arbitration provision in the Card Agreement.  In reaching this decision, the Court is required to apply state law principles of contract formation.  See Bacon v. Avis Budget Group, Inc., 959 F.3d 590, 600-01 (3d Cir. 2020) ("One component of a valid arbitration agreement is that the parties agreed to arbitrate.  To determine this, we apply state-law principles of contract formation.")

The parties disagree on whether the principles of contract formation of South Dakota or Pennsylvania apply here.  Defendant argues that South Dakota law applies under the choice of law provision in the Card Agreement, which states that "Federal law and the law of South Dakota govern the terms and enforcement of this Agreement."  (Doc. No. 19-2 at 14; Doc. No. 19-3 at 19.)  Despite this provision, Plaintiff argues that Pennsylvania law applies, and under Pennsylvania law, the Agreement is invalid and unenforceable.  (Doc. No. 20-2 at 4-6.)

The Third Circuit has provided guidance on how to resolve this dispute.  "In a federal question case, [the court] look[s] to the choice of law principles of the forum state to determine which state's law applies."  Gregoria v. Total Asset Recovery, Inc., No. CIV.A. 12-4315, 2015 WL 115501, at *3 (E.D. Pa. Jan. 7, 2015) (citing Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007)).  First, this is a federal question case because the claims arise under the FCRA and FCBA, which are federal statutes.  See 28 U.S.C. § 1331.  Second, because this case was brought in federal court in Pennsylvania, Pennsylvania's choice of law rules governs.  See Gregoria, 2015 WL 115501, at *3.

Under these rules, a court examines whether "the laws of the two jurisdictions would produce the same result on the particular issue presented."  White v. Sunoco, Inc., 870 F.3d 257, 263 (3d Cir. 2017) (quoting Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir.

2006)).  "If the results would be the same, there is no actual conflict and we should avoid the choice-of-law question." Id. (quotations omitted.)  As a result, this Court examines whether the laws of Pennsylvania and South Dakota would produce the same result.

Under Pennsylvania law, an enforceable contract has three elements: (1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently defined terms, and (3) an agreement supported by adequate consideration.  Legendary Art, LLC v. Godard, 888 F. Supp. 2d 577, 582 (E.D. Pa. 2012).  Regarding the first element, "[i]n assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." Santana v. A.L. Recovery, LLC, No. CV 18-16, 2018 WL 3912830, at *7 (W.D. Pa. Aug. 16, 2018) (quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009)).  Accordingly, the inquiry will focus on whether the parties' outward expression of assent is sufficient to form a contract.  Id.

First, Plaintiff used the credit card after receiving the Card Agreement, and therefore accepted its terms.  (Doc. No. 19 at 25-27); see also Martin v. Discover Bank, No. CIV.A. 12-2469, 2012 WL 6197992 (E.D. Pa. Dec. 3, 2012) (concluding plaintiffs accepted terms of a credit card agreement by using their cards when the agreements stated that each plaintiff, by using their card, agreed to its terms).  Second, the Card Agreement states that Plaintiff had the right to reject the arbitration agreement by mailing a rejection notice within 45 days of opening the account.  (Doc. No. 19-3 at 18.)  Defendant's records indicate that Plaintiff did not reject the Agreement (Id. at 23) and Plaintiff does not argue that it was rejected.  Thus, Plaintiff's use of the card and failure to reject the terms of the Card Agreement within the allotted 45 days constitutes a manifestation of an intent to be bound its terms.

Regarding the second element, the terms of the Agreement are sufficiently definite. "In Pennsylvania, '[a]n agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.'" Santana, 2018 WL 3912830, at *7 (internal quotations and citation omitted.) Here, Plaintiff does not argue that the arbitration provision should not be enforced because it lacks definiteness. The provision covers many subjects, including a list of the claims that could be asserted by the parties, the arbitration limits, a description of how arbitration works, the payment of arbitration fees, the survival and severability of terms, and how to reject the arbitration provision. (Doc. No. 19-3 at 17-18.) The Court is satisfied that the terms of the provision are sufficiently definite and require Plaintiff to arbitrate claims that fall within the scope of the provision.

Finally, the third element, consideration, is met. As the court in Santana explained

> "Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.'" Channel Home Centers v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986) (quoting Curry v. Thompson, 481 A.2d 658, 661 (Pa. Super. Ct. 1984)). "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." Blair, 283 F.3d at 603.

Santana, 2018 WL 3912830, at *8.

Here, the arbitration provision is supported by consideration because Plaintiff and Defendant agreed to arbitrate claims based on "statutory [and] regulatory provisions," and the alleged violations of the FCRA and the FCBA fall within this category. (Doc. No. 19-3 at 17.) Therefore, a valid arbitration agreement exists under Pennsylvania law.

A valid arbitration provision also exists under South Dakota law. Under South Dakota law, continued use of a credit card constitutes acceptance of the card agreement, especially where there is adequate opportunity to reject the terms. S.D. Codified Laws § 54-11-9 (establishing that "[t]he

9

use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer"). In this case, Plaintiff used the card and thereby created a binding contract under the terms of the Card Agreement. In doing so, Plaintiff accepted the Card Agreement in its entirety, which includes the arbitration provision. And as noted above, Plaintiff was given 45 days to reject the arbitration provision when the Card Agreement was sent in October 2018. Plaintiff never rejected the provision and continued to use the credit card. These actions constitute an acceptance of the terms of the arbitration requirements in the Card Agreement.

Thus, the law of Pennsylvania and South Dakota would produce the same result, that is, the arbitration agreement is valid and enforceable. See White, 870 F.3d at 263. Because the outcome is the same, there is no actual conflict of law and the Court need not select which states' law applies or further address the choice of law analysis.

**2.  The Disputes Fall Within The Scope Of The Arbitration Agreement.**

"Any inquiry into the scope of an arbitration clause must necessarily begin with the assumption that arbitration applies." Santana, 2018 WL 3912830, at *8. And in deciding whether the dispute falls within the scope of the agreement, the Third Circuit has explained,

> In determining whether the particular dispute falls within a valid arbitration agreement's scope, "there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Techs., 475 U.S. at 650, 106 S.Ct. at 1419 (internal quotation marks and citations omitted).

Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 524 (3d Cir. 2009).

Here, the arbitration agreement explicitly states,

> all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our

10

> negligence, <u>statutory or regulatory provisions</u>, or any other sources of law . . . This also includes Claims made by or against anyone connected with us or you or claiming through us or you . . .

(Doc. No. 19 at 17 (emphasis added.))

Plaintiff's claims against Defendant Citibank are based on violations of the FCRA and FCBA statutes. These claims fall within the scope of the Card Agreement, and the arbitration clause covers them.

### 3. Plaintiff's Argument That The Arbitration Agreement Is Invalid and Unenforceable Based On Defendant's Alleged Breach of Contract Fails.

Finally, Plaintiff's argument that the arbitration agreement is invalid and unenforceable because Defendant breached the Card Agreement is unavailing. (See Doc. No. 20-2 at 4-10.) Plaintiff avers that the arbitration agreement is not enforceable because "[t]he contract containing the alleged arbitration agreement has been invalidated by Defendant Citibank's material breach of contract." (Id. at 5.) The Third Circuit has found, however, that attacks on the validity of a contract as a whole, as opposed to the arbitration clause in particular, does not present a question of arbitrability. <u>Puleo v. Chase Bank USA, N.A.</u>, 605 F.3d 172, 180 n.4 (3d Cir. 2010). A challenge to an arbitration clause is considered separately because an agreement to arbitrate is severable from a larger contract, and therefore may be enforced and its validity determined independent of the contract as a whole. <u>LoMonico v. Foulke Mgmt. Corp.</u>, No. CV1811511RBKAMD, 2020 WL 831134, at *2 (D.N.J. Feb. 20, 2020) (citing <u>Rent-A-Center v. Jackson</u>, 561 U.S. 63 (2020)). "Thus, to qualify as a question of arbitrability that the Court may consider, the challenge must 'relat[e] to the making and performance of the agreement to arbitrate.'" Id. (quoting <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 338 U.S. 395, 404 (1967)).

Here, Plaintiff does not argue that the specific arbitration provision is invalid as written, but only the Card Agreement is "invalidated" because Defendant allegedly breached it in violation of the FCRA. As explained by the court in LoMonico,

> [U]nder the severability principle, [courts] treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears. Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes—including disputes about the validity of their broader contract—to arbitration.

Id. at *6 (quoting New Prime, Inc. v. Oliveira, 139 S. Ct. 532, 538 (2019)). Here, Plaintiff did not specifically challenge the validity of the agreement to arbitrate. Thus, Plaintiff's argument that Defendant's alleged breach of the Card Agreement invalidated it fails.

### B. Enforcement Of The Arbitration Agreement Would Not Result In Prejudice To Any Of The Parties.

Although prejudice is not an element of the enforceability of an arbitration agreement, Plaintiff asserts that if this Court were to compel arbitration, it would result in prejudice to all parties. Plaintiff argues that compelling arbitration would force him to litigate this matter on multiple fronts: in arbitration against Citibank and in court against Trans Union and Experian. However, "[t]he fact that [Plaintiff] will be required to pursue his claims against different defendants in different fora is not grounds to deny motions to compel arbitration." Winton v. Trans Union, LLC, et al., No. 18-5587, 2019 WL 1932342 at *5 (E.D. Pa. May 1, 2019), reconsideration denied, No. CV 18-5587, 2019 WL 4034781 (E.D. Pa. Aug. 27, 2019). Since Plaintiff's argument fails to articulate any facts that would support his hardship claim, enforcement of the arbitration agreement would not result in prejudice to either party.

### C. Bearing Costs Of Arbitration

Lastly, Plaintiff argues that in the event the Court compels arbitration, Defendant should bear all associated costs. The arbitration provision in the Card Agreement includes a section titled "Paying for arbitration fees." This section states,

> We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

(Doc. No. 19 at 18.)

If a plaintiff seeks to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . [Plaintiff] bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000). This burden is met when a plaintiff provides evidence that shows (1) the projected fees that would apply to the arbitration; and (2) an inability to pay those costs. Id.; Parilla v. IAP Worldwide Serv., 368 F.3d 269, 283-85 (3d Cir. 2004); Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 268-69 (3d Cir. 2003).

Here, Plaintiff has not provided any evidence of projected fees or an inability to pay them. Therefore, the entire arbitration provision as written is enforceable, including the section that describes the allocation of fees.

### V. CONCLUSION

Defendant Citibank's Motion to Compel Arbitration and to stay claims pending against it will be granted. The Card Agreement provides that arbitration will be conducted under the

auspices of the American Arbitration Association ("AAA"). (Doc. No. 19-3 at 18.[4])  Accordingly, an appropriate Order will be entered compelling arbitration under the supervision of the AAA and staying this case only against Citibank.[5]

---

[4]   The Card Agreement states as follows:

> Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision.  You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879.  You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel.  Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.

[5]   Under the FAA, a "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander, 341 F.3d at 263 (citing 9 U.S.C. §§ 3-4); see also Winton, 2019 WL 1932342, at *5 (granting motion to compel arbitration and staying pending claims against defendants going to arbitration).